# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| SANG J. YI, <br>                  Plaintiff, <br> vs. <br><br> CAROLYN W. COLVIN,[1] <br>                  Defendant. | Case No. 2:12-cv-01590-APG-PAL <br><br> **REPORT OF FINDINGS** <br> **AND RECOMMENDATION** <br><br> (Mtn for Judgment on Pleadings- Dkt. #8) <br> (Cross Mtn to Affirm - Dkt. #12) |

This case involves judicial review of administrative action by the Commissioner of Social Security denying Plaintiff Sang J. Yi's ("Plaintiff" or "Yi") claim for disability insurance benefits under Title XVI of the Social Security Act (the "Act").

## BACKGROUND

**I.    Procedural History.**

Plaintiff filed his application for disability insurance benefits on July 30, 2009, alleging he was disabled and had been unable to work since November 1, 2008. A.R. 97-104. The Social Security Administration (the "SSA") denied Plaintiff's application initially and on reconsideration. A.R. 42-45, 48-50. On March 16, 2010, Plaintiff requested a hearing before an administrative law judge (an "ALJ"). On May 12, 2011, Plaintiff appeared at the hearing in Las Vegas, Nevada, with his representative and testified with the help of a Korean interpreter before ALJ Norman L. Bennett. A.R. 23-37. A vocational expert, Dr. Genaro, also testified. A.R. 35-36.

In a written decision entered June 1, 2011, the ALJ found Plaintiff was not disabled from November 1, 2008, through June 1, 2011. A.R. 10-16. The ALJ determined Plaintiff had the residual

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

functional capacity ("RFC") to perform a full range of medium work and could, therefore, perform his past relevant work as a porter. A.R. 12, 15. The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

Plaintiff filed his Complaint (Dkt. #1) in federal court pursuant to 42 U.S.C. § 405(g) on September 7, 2012. The Commissioner filed an Answer (Dkt. #5) on December 5, 2012. The court entered a Scheduling Order (Dkt. #7) on December 13, 2012, and on January 14, 2013, Plaintiff filed a Motion for Judgment on the Pleadings (Dkt. #8). The Commissioner filed a Cross-Motion to Affirm (Dkt. #13) and Opposition (Dkt. #12) to Plaintiff's Motion to Remand. The Cross-Motion and Opposition were filed as one document, but the Clerk of the Court entered it as two separate documents in accordance with Special Order 109 and the court's electronic filing procedures. No response to the Cross-Motion was filed, nor was a reply to the Motion for Judgment on the Pleadings filed, and the time for filing both has now run. These matters were automatically referred to the undersigned for findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

## II.     **Factual Background.**

### A.     **Plaintiff's Workplace Injury.**

Plaintiff's symptoms began after a workplace injury on April 26, 2006. A.R. 176. At that time, Plaintiff was employed by as a porter at the Orleans Hotel and Casino in Las Vegas, Nevada. A.R. 166, 176. As a porter, Plaintiff performed general cleaning and minor repairs. A.R. 115. He contends he walked for six hours and stood for two hours of his eight-hour workday. *Id.* He stooped, kneeled, crouched. *Id.* He was required to handle, grab, or grasp big objects; reach; and write, type, or handle small objects. *Id.* The heaviest weight he lifted was fifty pounds, and he frequently lifted fifty pounds. *Id.* Thus, Plaintiff's past relevant work as a porter was performed at a medium exertional level. A.R. 168. Medium work involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objects weighing up to twenty-five pounds. *See* 20 C.F.R. § 404.1567. A full range of medium work requires standing or walking, on and off, for approximately six hours in an eight-hour workday. *See* SSR 83-10. Sitting may occur intermittently in the remaining time. *Id.* Use of the arms and legs is necessary to grasp, hold, and turn objects. Frequent bending and stooping is required. *Id.* Plaintiff was pushing a supply cart, lost his balance, twisted forward, and fell while his right leg was still caught.

A.R. 168, 176. As he fell, his right elbow struck the metal supports of a slot machine chair. *Id.* Plaintiff experienced right elbow pain, and two or three days later, he had symptoms in his lower right leg and his lower back. *Id.* At the time, Plaintiff also experienced referred pain in his low back, right hip, right knee, and right ankle, but he had no left-sided complaints. *Id.* Plaintiff claims he became disabled as a result of this injury and is unable to work as a porter as a result. A.R. 114.

### B. Dr. Hugh S. Selznick's Consultation Report.

Plaintiff saw Dr. Selznick, an orthopaedic surgeon, on May 7, 2008, after Dr. Selznick had reviewed many of Plaintiff's medical records.[2] A.R. 176, 179-82. Plaintiff told Dr. Selznick that Plaintiff had been injured on the job while working as a porter at the Orleans Hotel and Casino on April 24, 2006. A.R. 176. Dr. Selznick observed that Plaintiff was healthy looking, but Plaintiff was in moderate distress and sat rather uncomfortably throughout the interview process. A.R. 177. Dr. Selznick found that Plaintiff's active cervical extension was thirty degrees, active left and right rotation was eighty degrees, and active left and right lateral bending was forty degrees. A.R. 178. Dr. Selznick observed no facial grimacing with the range of motion tests, and Plaintiff did not report pain. A.R. 178.

Examination of Plaintiff's right elbow showed full extension to 180 degrees and flexion to 140 degrees. A.R. 178. Dr. Selznick observed "diffuse discoloration, almost a deep red ruber referable to the right upper extremity more so than the left." A.R. 178. Dr. Selznick found Plaintiff's gait to be abnormal, and Plaintiff was unable to walk heel to toe. A.R. 178. Plaintiff used a cane in his left hand. A.R. 178. Dr. Selznick noted that Plaintiff "ambulated almost like a post cerebrovascular accident patient with diminished strength referable to the right lower extremity." A.R. 179.

Examination of Plaintiff's back revealed decreased flexion ability. A.R. 179. Plaintiff was uncooperative with right and left lateral bending and right and left rotation. A.R. 179. When Dr. Selznick examined Plaintiff's right foot, Plaintiff demonstrated "incredible discomfort" and "significant perceived pain that caused tears." A.R. 179. Dr. Selznick also observed Plaintiff had diffuse hypersensitivity to a light touch on the dorsal and plantar aspect of the right foot. A.R. 179. Dr. Selznick also observed that Plaintiff had a vague discoloration–"almost a dependent ruber in the right

---

[2] None of these records Dr. Selznick reviewed were included in the A.R. However, the medical records Dr. Selznick reviewed were identified and summarized in his report.

lower extremity when compared to the left." A.R. 179.  The doctor observed an "almost disuse swelling referable to the right calf." A.R. 179.

Dr. Selznick diagnosed Plaintiff as having suffered a right elbow contusion and a lumbar spine myofascial sprain/strain when he was injured on April 24, 2006.  A.R. 182.  Dr. Selznick concluded that Plaintiff had developed a complex regional pain syndrome, more profound in the right lower extremity, as well as a more mild complex regional pain syndrome to the right upper extremity.  He noted that electrical studies conducted at Dr. Chin's request on August 7, 2006, were normal with no evidence of peripheral neuropathy or lumbosacral radiculopathy.  A.R. 183.  He opined that based on medical records provided, Plaintiff's lumbosacral spine myofascial sprain/strain was satisfactorily resolved.  *Id.*  However, as of a Partial Disability Evaluation on May 12, 2007, Plaintiff was suffering persistent pain down the length of his right lower extremity.  *Id.*  Dr. Selznick noted that Plaintiff had not received active treatment for injuries related to his workplace accident since November 2, 2006.  *Id.*  He found no objective evidence of orthopedic traumatic or structural injury.  A.R. 184.  He recommended referral to a pain specialist for appropriate evaluation and management.  *Id.*

### C. Dr. Karyn Rae Doddy's Independent Medical Examination Report.

Dr. Doddy conducted an independent medical examination of Plaintiff on February 11, 2009.  A.R. 185.  She reviewed a series of Plaintiff's medical records from 2006 through 2008.[3]  A.R. 185-87.  She described Plaintiff as a well-developed, well-nourished thin man who ambulated with "antalgic gait and station, protective of the right limb." A.R. 187.  She observed that he tended to maintain a stretched out and protective posture through the right limbs.  A.R. 187.  She found objective evidence of the original contusion/nerve compression injury at his right elbow in electrodiagnostic studies done in July 2008.  A.R. 189.  She recommended a bone scan to provide objective evaluation of the diagnosis of complex regional pain syndrome.  A.R. 189.  She also recommended Plaintiff seek to normalize his posture and progressively increase his overall level of physical activity to improve his physical status and prevent any further decline in functional capacity.  A.R. 189.

///

---

[3] None of the medical records Dr. Doddy reviewed are included in the A.R.  Her report did, however, identify and summarize the records she reviewed.

**D.     Dr. Jerrold M. Sherman's Consultative Exam Report.**

Dr. Sherman conducted a consultative orthopedic examination and evaluation of Plaintiff on February 10, 2010. A.R. 148-153. Dr. Sherman observed Plaintiff used a lumbar corset on a daily basis and a cane for ambulation. A.R. 148. Plaintiff entered the examination room with a "right stiff-leg gait." A.R. 149. Dr. Sherman observed Plaintiff was seated easily, and he declined to walk on his heels and toes or perform any squatting maneuver. A.R. 149. Plaintiff was seated on the examination table easily and sat up from a lying position without evidence of back pain. A.R. 149.

On examination, Plaintiff's neck exhibited a "variable range of motion." A.R. 149. Dr. Sherman observed that when Plaintiff's attention was directed toward his neck, he forward flexed ten degrees, extended zero degrees, and rotated right/left twenty degrees, "complaining bitterly of pain." A.R. 149. However, he forward flexed his neck thirty degrees and rotated right/left sixty degrees when distracted. A.R. 149. Similarly, upon examining Plaintiff's spine, he forward flexed thirty degrees, declining further movement because of pain and "complaining bitterly of pain in the back." A.R. 150. However, when his back was not being directly examined, he flexed his lumbar spine ninety degrees when sitting up from a lying position "without difficulty." A.R. 150. Dr. Sherman noted no muscle spasm in the paraspinous muscles of the lumbar spine. A.R. 150.

Dr. Sherman's evaluation of Plaintiff's upper extremities was "one hundred percent normal," and Plaintiff's range of motion in his left shoulder, elbow, and wrist were pain free. A.R. 150. Plaintiff declined to make any motion with his right arm, complaining of pain and numbness "with any light touch about the right arm." A.R. 150. Plaintiff's examination in the sitting position was normal, but he declined any movement of the right hip, knee, and ankle while in the supine position. A.R. 150. Plaintiff's spinal x-rays were normal except for a mild narrowing at the C5-6 disk interspace. A.R. 150. Plaintiff's right ankle x-ray was normal. A.R. 150. No osteoporosis, osteoarthritis, or fractures were observed in any of Plaintiff's x-rays. A.R. 150.

Dr. Sherman concluded Plaintiff was able to sit, stand, and walk for six hours during the course of an eight-hour day. A.R. 151. Plaintiff did not require a cane, brace, or assistive device to ambulate. A.R. 151. The doctor found Plaintiff could frequently lift twenty-five pounds and occasionally lift fifty pounds., A.R. 151. Dr. Sherman concluded Plaintiff had no restrictions on forward bending at the

waist, squatting, kneeling, pushing, pulling, grasping, or fine manipulation activities with the hands. A.R. 151. Dr. Sherman described Plaintiff's behavior as "MANIPULATIVE." A.R. 153 (capitalization in original). The doctor found that Plaintiff retained a medium residual functional capacity ("RFC") without restrictions and would be capable of performing his past work as a porter. A.R. 152-53.

### E. Dr. Thalgott's Report.

On April 5, 2011, Plaintiff saw Dr. Thalgott at the Center for Diseases and Surgery of the Spine for low back pain, weakness and hypersensitivity in his right upper and lower extremities, and an inability to sit or stand for any length of time. A.R. 170. Dr. Thalgott issued a written assessment of Plaintiff's condition and his RFC. A.R. 170-175. On examination, Dr. Thalgott observed that Plaintiff would not shake hands with his right hand because of pain, and he appeared to be uncomfortable. A.R. 171. Dr. Thalgott found Plaintiff's cervical flexion was chin to chest, extension thirty degrees, and turning and bending thirty degrees. A.R. 171. He noted Plaintiff's right upper extremity was discolored and purple and exhibited hypersensitivity. A.R. 171. Plaintiff had decreased grip and punch strength, and Plaintiff had a hard time moving from a sitting to standing position. A.R. 171. Plaintiff's lumbar spine had limited range of motion, causing pain, and Plaintiff dragged his foot. A.R. 171. Plaintiff could not stand on his heels or toes on his right lower extremity. Dr. Thalgott did not order x-rays but found Plaintiff's MRI report "from years ago" showed degenerative changes in Plaintiff's lumbar spine. A.R. 171.

Dr. Thalgott concluded Plaintiff was disabled and suffers from neurologic/neuropathic pain. A.R. 172. He diagnosed Plaintiff with reflex sympathetic dystrophy ("RSD")[4] and chronic regional pain syndrome in his upper and lower extremities. A.R. 172. Dr. Thalgott strongly recommended a neurological work-up and injections in Plaintiff's autonomic chain and sympathetic blocks in his arms and legs. A.R. 172. Dr. Thalgott found that Plaintiff was capable of only sedentary work. *See* A.R. 173-175; 20 C.F.R. § 404.1567; SSR 83-10. Dr. Thalgott filled out a Medical Assessment of Ability To

---

[4]RSD is a condition characterized by localized or diffuse pain, usually with associated swelling, trophic changes, and vasomotor disturbance. Motor abnormalities, including tremor, involuntary movement, and muscle spasm have been reported. RSD may affect any region of the trunk or limbs. *See generally* www.rheumatology.oxfordjournals.org/content/39-7-692.full (last visited April 16, 2013).

Do Work-Related Activities form indicating Plaintiff could frequently lift less than ten pounds, could stand or walk with normal breaks for less than two hours of an eight-hour workday, and must periodically alternate sitting and standing to relieve pain or discomfort.  A.R. 173-74.  Plaintiff was limited in his upper extremities by poor coordination associated with RSD and in his lower extremities by weakness associated with RSD.  A.R. 174.  Dr. Thalgott referred Plaintiff to Dr. Wait Kidwell for this treatment.  A.R. 172.  There is no indication in the record Plaintiff ever saw Dr. Kidwell.

## II.     Testimony at the Administrative Hearing.

### A.     Plaintiff's Testimony.

Plaintiff was born September 29, 1953.  A.R. 28.  He is 5'8" tall and weighs 130 lbs.  A.R. 28.  He is married and lives with his wife and his adult daughter.  A.R. 28, 30.  His wife handles the cooking, cleaning, and laundry.  A.R. 30-31.  Plaintiff testified he could not perform those tasks because of his pain.  A.R. 31.  Although he has a driver's license, he only drives in emergency situations because he is in too much pain to drive.  A.R. 28, 30.  His daughter normally drives him when he needs to travel.  A.R. 30.

Plaintiff was last employed as a porter at the Orleans Hotel & Casino in Las Vegas, Nevada.  He was employed as a porter for the previous eighteen years.  A.R. 29.  During his employment as a porter, he had to lift fifty pounds continuously.  A.R. 29.  His last day of employment was December 18, 2008.  Plaintiff's symptoms began after a workplace injury on April 26, 2006.  A.R. 32.  While pulling a supply cart, his right leg became caught on the cart's wheel.  A.R. 32.  Plaintiff testified that he can lift three to five pounds comfortably.  A.R. 31.  When he lifts more weight than that, he feels pain in his leg, shoulder, neck, and arms.  A.R. 31.  He can walk comfortably for fifteen to twenty minutes at a time.  A.R. 31.  He testified that he has difficulty standing and sitting and can only do each activity for twenty or thirty minutes at a time.  A.R. 31-32.

Plaintiff testified that he stopped treatment for about eighteen months because the treatment was not helping his symptoms.  A.R. 35.

The vocational expert, Dr. Genaro, testified that Plaintiff's former occupation as a porter was medium work.  A.R. 36.

///

**III.     The ALJ's June 1, 2011, Decision.**

As an initial matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 13, 2013. A.R. 12. He then engaged in the required five step sequential evaluation process. At step one, he found Plaintiff had not engaged in substantial gainful activity since November 1, 2008, the alleged disability onset date. A.R. 12. At step two, he found Plaintiff suffered from the following severe impairments: RSD and degenerative disk disease ("DDD")[5] of the cervical and lumbar spine. A.R. 12. He found these impairments more than minimally affected Plaintiff's ability to perform basic work activities. A.R. 12. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that, individually or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. A.R. 12.

At step four, the ALJ found, based on his independent review of the record as a whole, that Plaintiff retained the RFC to perform a full range of medium work as defined in 20 C.F.R. 404.1567 (c) and could therefore perform his past relevant work as a porter. A.R. 12. The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effect of his symptoms were not credible to the extent they were inconsistent with the ALJ's RFC finding. A.R. 13. The ALJ concluded that Plaintiff's allegations of disabling pain and other symptoms were disproportionate to the minimal objective findings in the A.R. and were inconsistent with the medical opinion evidence. A.R. 13. Although the medical evidence in the A.R. showed Plaintiff had RSD and DDD, these impairments did not appear to interfere with Plaintiff's ability to perform all basic work activities. A.R. 13. The ALJ specifically noted that the state agency's RFC, consultative examination, and medical examination all showed Plaintiff was able to perform most basic work activities. A.R. 13.

The ALJ also found Plaintiff to be "less than credible." A.R. 13. First, the minimal objective findings in the record did not support Plaintiff's allegations. Dr. Selznick's evaluation showed that Plaintiff had a full range of motion in his neck, no tenderness in the cervical spine, full extension in the

---

[5]DDD is a condition in which discs in the spine degenerate as a result of aging. Disc degeneration can lead to spinal instability, a condition in which the spine cannot support the patient's weight or perform its normal functions without disabling pain. *See* www.neurosurgery.ucla.edu/body.cfm?id=1123&ref+111&action=detail (last visited April 16, 2013).

right elbow, and normal muscle tone in his upper extremities. A.R. 13. Additionally, Plaintiff had non-verifiable radicular complaints, a normal knee evaluation, and normal electrical testing of the lower extremities. A.R. 13. X-rays of Plaintiff's lumbar spine and right ankle were normal, revealing no osteoarthritis, osteoporosis, or fractures. A.R. 13. The x-ray of Plaintiff's cervical spine showed only mild narrowing at the C5-6 interspace, with otherwise well-maintained intervertebral disc space and no evidence of osteoporosis or fractures. A.R. 13. A consultative examiner also found Plaintiff had no neurological deficits. A.R. 13.

Second, the ALJ found the A.R. contained "clear evidence" that Plaintiff's portrayed limitations that were not actually present. A.R. 13. The ALJ cited Dr. Sherman's report which indicated Plaintiff's behavior was manipulative and indicated exaggeration. A.R. 13-14. Dr. Sherman also observed that Plaintiff's neck revealed a variable range of motion–that is, more limited when examination was directed at the neck and less so when the examination was focused elsewhere. A.R. 14. The ALJ found Plaintiff's demeanor during the examination and most of the record was "overly dramatic." A.R. 14. Third, Plaintiff was inconsistent regarding his ability to speak and understand English. A.R. 14. Although he was assisted by an interpreter during the hearing, the ALJ did not accept his representation that he could not understand English because (a) in his past work as a porter, Plaintiff would have required at least a basic working knowledge of English; and (b) Plaintiff responded to questions posed at the hearing in English before the interpreter had translated the question.

Fourth, the ALJ also relied on opinion evidence in the A.R. in making his credibility determination. Dr. Sherman examined the Plaintiff, and the examination was essentially normal. A.R. 14. The ALJ found Dr. Sherman's opinion was consistent with the record as a whole and afforded it great weight. A.R. 14. The ALJ afforded the opinion of Plaintiff's treating physician, Dr. Thalgott, no weight because he relied "quite heavily" on Plaintiff's subjective report of symptoms and limitations and seemed to accept most of them, uncritically, as true. A.R. 15. Further, no progress notes or a longitudinal record supported Dr. Thalgott's opinion. A.R. 15. The ALJ afforded Dr. Selznick's opinion that Plaintiff could perform light-medium work "some weight." A.R. 15. Although it was somewhat consistent with the ALJ's RFC finding, it was based on a one-time assessment. A.R. 15. The ALJ considered the Disability Determination Services's RFC conclusions and afforded them significant

weight because the record as a whole supported them. A.R. 15. For all of these reasons, the ALJ concluded that Plaintiff was capable of performing his past relevant work as a porter for a casino performing general cleaning, and therefore, Plaintiff was not disabled as of the application date. A.R. 15, 26-27.

## DISCUSSION

**I.     Judicial Review of Disability Determination**

District courts review administrative decisions in social security benefits cases under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). The statute provides that after the Commissioner of Social Security has held a hearing and rendered a final decision, a disability claimant may seek review of the Commissioner's decision by filing a civil lawsuit in federal district court in the judicial district where the disability claimant lives. *See* 42 U.S.C. § 405(g). That statute also provides that the District Court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The Ninth Circuit reviews a decision of a District Court affirming, modifying, or reversing a decision of the Commissioner de novo. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

**II.    Disability Evaluation Process**

To qualify for disability benefits under the Social Security Act, a claimant must show that:

(a)   he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and

(b)   the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A).

The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  If a claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy.  *Batson*, 157 F.3d at 721.

### A. Five-Step Sequential Evaluation Process

20 C.F.R. § 416.920 establishes a five-step sequential evaluation process to be followed by the ALJ in a disability case.  *Mendoza v. Apfel*, 88 F. Supp. 2d 1108, 1111 (C.D. Cal. 2000).  The first step requires the ALJ to determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. 416.920(b).  If the claimant is currently engaged in substantial gainful activity, a finding of non-disabled is made, and the claim is denied.  The second step requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments that significantly limit him or her from performing basic work activities.  20 C.F.R. § 416.920(c)).  If the ALJ determines that the claimant has no such impairment, a finding of non-disabled is made, and the claim is denied.  The third step requires the ALJ to compare the claimant's impairment(s) with those impairments in the Listing of Impairments ("Listing") located at 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. § 416.920(d). If the impairment(s) meets or equals an impairment in the Listing, disability is conclusively presumed, and benefits are awarded.

If the impairment(s) does not meet or equal an impairment in the Listing, step four requires the ALJ to determine whether the claimant has sufficient RFC despite his or her impairment(s), to perform past work.  *See* 20 C.F.R. § 416.920(e).  RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities.  Social Security Administration, *Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, 1996 SSR LEXIS 5, *8.  If the claimant is still capable of performing past work, a finding of non-disabled is made, and the claim is denied.  The claimant has the burden of proving that he or she cannot perform past work.  *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).  If the claimant cannot perform past work, a prima facie case of disability is established, and step five shifts the burden to the Commissioner to prove that the claimant, based on his or her age, education, work experience, and RFC, can perform other substantial gainful work that exists in significant numbers in the national economy.

20 C.F.R. § 416.920(f). If the ALJ finds that any one of the five steps establishes that the claimant is not disabled, no further evaluation is required. *See* 20 C.F.R. § 404.1520(a).

### B.      Standard of Review

When deciding a Social Security appeal, the decision of the Commissioner must be affirmed if it is supported by substantial evidence, and the Commissioner applied the correct legal standards. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) (citation omitted). Substantial evidence is relevant evidence which a reasonable person might accept as adequate to support a conclusion when the entire record is considered. *Id.* (citation omitted). It "is more than a mere scintilla, but less than a preponderance." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003) (citation omitted). The Commissioner's "resolution of any conflicts in the evidence, if reasonable, must be affirmed. *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding the court must uphold the Commissioner's decision where the evidence is susceptible to more than one rational interpretation); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (same). Where the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its own judgment for that of the Commissioner. *Batson*, 359 F.3d at 1196 (citation omitted). Thus, the question before the court is not whether the Commissioner reasonably could have reached a different outcome, but whether the Commissioner's final decision is supported by substantial evidence. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). It is unequivocally the claimant's burden to demonstrate that he or she has a disabling mental or physical condition by providing "specific medical evidence" in support of the claim. 20 C.F.R. § 404.1514; *see Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (citing *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) ("The claimant bears the burden of proving she is disabled.")).

It is incumbent on the ALJ to make specific findings so that the court need not speculate as to the findings. *Lewin*, 654 F.2d at 635 (citing *Baerga v. Richardson*, 500 F.2d 309 (3d Cir. 1974)). In order to enable the court to properly determine whether the Commissioner's decision is supported by substantial evidence under 42 U.S.C. § 405(g), the ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Lewin*, 654 F.2d at 635.

**C.     The Parties' Positions**

   **1.     Plaintiff's Motion for Judgment on the Pleadings (Dkt. #8).**

Plaintiff contends that the ALJ's determination that Plaintiff had an RFC to perform medium work is not supported by substantial evidence. First, Plaintiff asserts that medium work "presents an exertional challenge to persons approaching age sixty even if in good health." Motion at 5:20-22. Second, the ALJ erred in assigning Plaintiff's treating physician's opinion no weight and instead placing "near total reliance on the findings of Dr. Sherman." Motion at 6:1-3. Specifically, Plaintiff argues that Dr. Sherman did not acknowledge Plaintiff's impairment of RSD. Therefore, the ALJ should not have given full credit to his opinions when he failed to observe a serious medical condition, especially where the ALJ himself concedes this impairment at step two of his evaluation. Third, Plaintiff has a consistent history of hard work, and "that is not the track record of a dissembler or malingerer." Motion at 6:9-11. Fourth, Plaintiff asserts that the Medical-Vocational guidelines contained at 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 202.08 and 202.09 mandate a finding of disability because Plaintiff was fifty-five years or older and capable of performing light, but not medium, work. Thus, because there is not substantial evidence supporting the ALJ's conclusion that Plaintiff has an RFC for medium work, Plaintiff should be found disabled and awarded disability insurance benefits.

   **2.     Commissioner's Cross-Motion to Affirm and Opposition (Dkt. ##12, 13).**

The Commissioner asserts that the ALJ's decision is supported by substantial evidence and should be affirmed. In making his RFC determination, the ALJ properly relied on the opinions of Dr. Sherman and Dr. Selznick, both consultative examiners. Citing *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007), the Commissioner argues that reports from consultative examiners are substantial evidence because of their independent clinical findings. Here, Dr. Sherman found that although Plaintiff had severe complaints, Plaintiff's examination was essentially normal, he had no objective abnormalities, and his behavior was manipulative. All of these findings are supported by the doctor's examination findings and observations that Plaintiff was more functional when he was unaware the doctor was testing him. The discrepancies between Plaintiff's alleged limitations and Dr. Sherman's observations support the doctor's opinion that Plaintiff's behavior during the examination was manipulative.

///

Dr. Selznick's examination findings were consistent with Dr. Sherman's and showed Plaintiff had a full range of motion in his neck, no tenderness in the cervical spine, full extension in the right elbow, and normal muscle tone in his upper extremities.  Dr. Selznick found Plaintiff was capable of performing light-medium work.  The ALJ acknowledged Dr. Selznick's RFC opinion was consistent with the ALJ's own RFC finding and afforded Dr. Selznick's opinion "some weight" because it was based on a one-time assessment.

The ALJ also found Plaintiff was not credible, and Plaintiff does not challenge the ALJ's adverse credibility finding.

The ALJ also properly rejected the opinion of Plaintiff's treating physician, Dr. Thalgott. Deference to a treating physician's opinion is not absolute, and according to 20 C.F.R. § 404.1527(d)(2), an ALJ is not required to give it controlling weight unless it is well-supported and not inconsistent with other substantial evidence in the record.  Here, the ALJ provided good reasons, supported by substantial evidence, to reject Dr. Thalgott's opinion.  The ALJ found that Dr. Thalgott relied heavily on Plaintiff's subjective report of symptoms and limitations, and the ALJ found Plaintiff was not credible. Additionally, no progress notes or longitudinal record supported Dr. Thalgott's opinion. The ALJ is the "final arbiter" to resolve ambiguities in the medical evidence, and the ALJ evaluated the conflicting opinions of the various physicians and found Plaintiff could perform a full range of medium work.

## IV.   Analysis and Findings

Reviewing the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion, the court finds the ALJ's decision is supported by substantial evidence, and the ALJ did not commit legal error.

### A.   The ALJ's Rejection of Dr. Thalgott's Controverted Opinion Was Not Error.

Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Thalgott, his treating physician. The implementing regulations for Title II of the Social Security Act distinguish among the opinions of three types of physicians: first, treating physicians; second, examining physicians (*i.e.,* physicians who examine but do not treat a claimant); and third, non-examining or reviewing physicians (*i.e.,* physicians who neither examine nor treat the claimant, but review the claimant's file). *Lester v. Chater*, 81 F.3d, 821, 830 (9th Circuit 1995); 20 C.F.R. § 404.1527(d).  Generally, a treating physician's opinion is

-14-

entitled to more weight than an examining physician's, and an examining physician's opinion is entitled to more weight than a reviewing physician's. *Lester*, 81 F.3d at 830; 20 C.F.R. § 404.1527(d). The Social Security Regulations give more weight to opinions that are explained than those that are not. 20 C.F.R. § 404.1527(d)(3). The Social Security Regulations also give more weight to opinions of specialists concerning matters relating to their specialty over that of non-specialists. 20 C.F.R. § 404.1527(d)(5).

The ALJ must consider all medical evidence. *See* 20 C.F.R. § 404.1527(b). When an ALJ rejects a treating physician's opinion that is contradicted by another doctor, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record. *See Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 692 (9th Cir. 2009); *Ryan v. Comm'r of Soc. Sec. Admin.,* 528 F.3d 1194, 1198 (9th Cir. 2008). An ALJ satisfies the burden of providing specific, legitimate reasons to reject a controverted treating physician opinion where he or she sets out a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 757 (9th Cir. 1989). An ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *See Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009).

Here, the ALJ provided a detailed and thorough summary of the medical evidence, providing his interpretation and making detailed findings. He considered Dr. Thalgott's opinion but afforded it no weight. First, the ALJ properly concluded that a treating physician's opinion on the ultimate issue of disability is not binding on the Commissioner. *See* SSR 96-5p; 20 C.F.R. § 404.1527(e)(1). Second, the ALJ found Dr. Thalgott did not cite any laboratory testing, progress notes, longitudinal records, or other objective evidence to support his opinion regarding Plaintiff's RFC. Dr. Thalgott's two-and-a-half page report of his April 5, 2011, visit does not identify or summarize any medical records he reviewed in reaching his opinion other than a reference to an MRI report from "years ago" that shows degenerative changes of Plaintiff's lumbar spine. Third, Dr. Thalgott primarily relied on Plaintiff's subjective complaints, which the ALJ found were not credible. The Ninth Circuit has held that an ALJ properly rejects a treating physician's opinion where it is based on the subjective complaints of a discredited claimant. *See Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008) (internal citations omitted). A

-15-

review of Dr. Thalgott's report shows that it largely reflects Plaintiff's reports of symptoms, with little independent analysis or diagnosis.

Additionally, the ALJ found Dr. Thalgott's opinion was inconsistent with the opinions of Dr. Sherman and Dr. Selznick, both of whom conducted a consultative examination and reviewed Plaintiff's medical history. The ALJ enumerated and analyzed the discrepancies between the various opinions, outlining substantial evidence in the record to support his rejection of Dr. Thalgott's opinion. The ALJ is responsible for responsible for determining credibility and resolving conflicts in the medical testimony and ambiguities. *See Andrews v. Shalala,* 53 F.3d 1035, 1039-40 (9th Cir. 1995) (internal citation omitted). Additionally, although Dr. Thalgott is listed as Plaintiff's treating physician, the only records in the A.R. relate to a single visit on April 5, 2011–nearly five years after Plaintiff's workplace accident. There is nothing in the record to suggest that Plaintiff had been treating with Dr. Thalgott either before or after April 5, 2011. Where an examining physician provides independent clinical findings that differ from a treating physician, those findings are substantial evidence. *See Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007) (internal citations omitted). Here, Dr. Sherman had a different diagnosis than Dr. Thalgott that was supported by substantial evidence in the record, and his opinion is therefore substantial evidence. *Id.* Therefore, on this record, the ALJ reasonably rejected Dr. Thalgott's opinion in favor Dr. Sherman's and Dr. Selznick's opinions.

With respect to Dr. Sherman's report, Plaintiff argues that the ALJ should not have given full credit to his opinion because Dr. Sherman failed to address the issue of RSD–a medical condition the ALJ acknowledges in his decision. As an initial matter, the ALJ gave Dr. Sherman's opinion "great weight" rather than "full credit" because Dr. Sherman's opinion was consistent with the record as a whole. Dr. Sherman did not mention RSD in his report because the results of his examination of Plaintiff were essentially normal. A.R. 148-51. Dr. Sherman's examination did not reveal Plaintiff was suffering from this condition. The ALJ outlined at length the observations of Dr. Sherman upon which he relied and which were consistent with the record as a whole. Although the ALJ found Plaintiff suffered from RSD at Step Two and Dr. Sherman did not diagnose Plaintiff with RSD, this was not error. The ALJ is the final arbiter with respect to resolving conflicts in medical testimony and ambiguities in the medical evidence. *Tommassetti,* 533 F.3d at 1041-42.

**B.     The ALJ Did Not Err in Making a Credibility Determination.**

The Ninth Circuit has consistently held that "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982); *see also Allen v. Heckler*, 749 F.2d 577, 580 n.1 (9th Cir. 1985). "The ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallenes,* 881 F.2d at 750. However, the ALJ's credibility findings must be supported by specific, cogent reasons. *See Rahad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990); *see also Yuckert v. Bowen*, 841 F.2d 303, 307 (9th Cir. 1988). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995); *see also Dodrill v. Shalala*, 12 F.2d 915, 918 (9th Cir. 1993). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing. *See Lester,* 81 F.3d at 834. In weighing a claimant's credibility, an ALJ may consider: the claimant's reputation for truthfulness; inconsistencies between his or her testimony and conduct; the claimant's daily activities and work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See Smolen*, 80 F.3d at 1284 (citations omitted). An ALJ's personal observation of a claimant at a hearing may also be considered in the overall evaluation of credibility. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); SSR 96-7p.

Although Plaintiff does not directly challenge the ALJ's credibility determination, the court finds the ALJ gave specific legitimate reasons for discrediting Plaintiff's statements concerning the degree of his impairments and limitations. The ALJ specifically identified which testimony he discredited and stated the evidence he relied upon in making that determination. Where evidence supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ's. *See Batson*, 359 F.2d at 1196. The ALJ found Plaintiff's "allegations of disabling pain and other symptoms were disproportionate to the minimal objective findings and were inconsistent with the medical opinion evidence. A.R. 13. The ALJ noted Dr. Sherman evaluated Plaintiff's physical health, finding it essentially normal. The ALJ found that the objective findings in the record did not support Plaintiff's allegations. He also found the record contained clear evidence that Plaintiff portrayed

limitations that were not there.  Additionally, he observed there were significant gaps in Plaintiff's history of treatments, suggesting the symptoms may not be as serious as he alleges.  Furthermore, he found the claimant was inconsistent regarding his ability to speak and understand English and that his demeanor as a witness at the administrative hearing, and throughout the A.R., was "overly dramatic." A.R. 14.

### C. Medical-Vocational Guidelines.

Plaintiff asserts that the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 202.08 and 202.09 mandate a finding of disability because Plaintiff was fifty-five years or older at the time of his application for disability benefits and is capable of performing light, but not medium, work.  The SSA promulgated the Medical-Vocational Guidelines to serve as an objective, standardized basis for decision making at the fifth step of the evaluation process.  *See* Hon. Dennis G. Katz, U.S. ALJ, SSA, *"Transferability of Skills" and the Medical-Vocational Guidelines Under the Social Security Act,* 1998 Fed. Cts. L. Rev. 5 at *2.7 & n.11 (Oct. 1998) (citing *Heckler v. Campbell,* 461 U.S. 458, 467-68 (1983)).  Here, however, there was no need for the ALJ to consider the Medical-Vocational Guidelines because the ALJ found Plaintiff was not disabled at Step 4 of the evaluation process when he found Plaintiff had the RFC to return to his past relevant work as a porter.  The ALJ was not required to consider Plaintiff's age at any previous step of the evaluation.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).  The ALJ did not err in failing to consider the Medical-Vocational Guidelines.

### V. Conclusion

Judicial review of a decision to deny disability benefits is limited to determining whether the decision is based on substantial evidence reviewing the administrative record as a whole.  If the record will support more than one rational interpretation, the court must defer to the Commissioner's interpretation.  If the evidence can reasonably support either affirming or reversing the ALJ's decision, the court may not substitute its judgment for the ALJ's.  *Flaten*, 44 F.3d at 1457.  It is the ALJ's responsibility to make findings of fact, drawing reasonable inferences from the record as a whole and to resolve conflicts in the evidence and differences of opinion.

There are conflicts in the evidence and some differences in the medical opinions expressed by Plaintiff's treating and examining physicians.  Having reviewed the Administrative Record as a whole,

and weighing the evidence that supports and detracts from the Commissioner's conclusion, the court finds that the ALJ's decision is supported by substantial evidence under 42 U.S.C. § 405(g).

For all of the foregoing reasons,

**IT IS RECOMMENDED**:

1. Plaintiff's Motion for Judgment on the Pleadings (Dkt. #8) be DENIED.
2. The Commissioner's Cross-Motion to Affirm (Dkt. #13) be GRANTED.

Dated this 17th day of April, 2013.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE